# EXHIBIT B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| STEVEN MATTHEWS, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>PRIORITY ENERGY SERVICES, LLC, et al.,<br><br>       Defendants. | No. 6:15-cv-00448-MHS-KNM<br><br>JURY TRIAL DEMANDED<br><br>FLSA COLLECTIVE ACTION |

## FIRST AMENDED COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Priority Energy Services, LLC; Priority Well Testing, LLC; and Priority Coiled Tubing, LLC (collectively "Priority") jointly employ individuals in the flowback/well testing and coiled tubing divisions. These workers were uniformly treated as exempt from the overtime requirements and paid a salary and job bonus.

2.      Further, these employees perform largely technical and manual labor type job duties for Priority on a daily and weekly basis. These workers work with their hands to operate oilfield machinery, open and shut valves, clean out separators, string together pipe, operate coiled tubing equipment and pumps, turn wrenches, swing hammers, and many other traditionally non-exempt job duties.

3.      Priority's employees routinely work in excess of 40 hours a week and were denied overtime, despite the non-exempt nature of their work.

4.      Steven Matthews is one of the many employees Priority denied proper overtime wages. He brings this collective action to recover unpaid overtime and related damages owed to Priority's workers.

Case 4:17-cv-01336 Document 107-1 Filed on 03/24/20 in TXSD Page 3 of 29

## JURISDICTION & VENUE

5.      This Court has federal question jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.      Venue is proper under 28 U.S.C. § 1391 since a substantial part of the events giving rise to this claim occurred in this District and Division.

## PARTIES

7.      Matthews was employed by Priority in the Eastern District of Texas. Matthews worked in the Henderson, Texas yard and performed substantial worked in the Tyler Division.

8.      Priority paid Matthews a base salary and bonus when working in the field. Although he regularly worked 80 or more hours in a week, Priority did not pay Matthews overtime.

9.      Matthews' written consent is on file with the Court.

10.     Matthews brings this action on behalf of himself and all other similarly situated employees under § 16(b) of the FLSA (the "FLSA Class"). *See* 29 U.S.C. § 216(b).

11.     The FLSA Class was subjected to the same unlawful policy as Matthews and is properly defined as:

> **All workers employed by Priority in the Flowback/Well Testing and Coiled Tubing divisions in past 3 years who were paid a salary and received a field bonus.**

The members of the FLSA Class are easily ascertainable from Priority's business records, particularly its personnel records.

12.     **Priority Energy Services, LLC** has been served with process and appeared in this case.

13.     Priority admitted in its original answer that it employed Matthews.

14.     **Priority Well Testing, LLC** may be served with process through its registered agent: **Kelly Raper, 5655 W. Sam Houston Parkway N., Houston, Texas 77041.**

15.      **Priority Coiled Tubing, LLC** may be served with process through its registered agent: **Kelly Raper, 5655 W. Sam Houston Parkway N., Houston, Texas 77041.**

16.     Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC all have the same registered agent – Kelly Raper.

17.     Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC share a common manger or governing person – Chris Abide.

18.     Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC share management personnel.

19.     Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC share offices.

20.     Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC share employees.

21.     Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC share equipment.

22.     Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC share customers.

23.     The processing of payroll for Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC is performed at the same location.

24.     Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC have access to the same payroll records.

25.     Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC promotional brochures refer readers to the same website – www.priorityenergyllc.com.

26.     The website at www.priorityenergyllc.com lists the "main office" for all locations at 681 River Highlands Blvd, Covington, LA 70433.

27.     Job opportunities for Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC are posted at www.priorityenergyllc.com/careers.

28.     Applicants for positions at Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC all fill out the same application (which is available at www.priorityenergyllc.com).

29.     The website at www.priorityenergyllc.com states that Priority has "over 450 employees throughout Louisiana, Texas, and Alaska." The "450 employees" include employees from Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC.

30.      Priority Energy Services, LLC, Priority Well Testing, LLC, and Priority Coiled Tubing, LLC are joint employers under the FLSA. *See* 29 U.S.C. § 791.2.

### FACTS

31.     Priority operates throughout Texas and the rest of the United States.

32.     It employs hundreds of workers.

33.     Priority's workers handle and/or work on goods or materials that moved in, or were produced for, interstate commerce.

34.     For example, many of Priority's employees use gloves, hand tools, high-pressure test equipment, lifts, steel-toe boots, and wrenches that moved in, or were produced for, commerce.

35.     Priority does more than 1 million dollars in business each year.

36.     Since "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA[,]" *Dunlop v. Industrial America Corp.*, 516 F.2d 498, 501–02 (5th Cir.1975), it would be silly for an employer with multi-state operations like Priority to waste this Court's time arguing it is not a covered enterprise.

37.     Matthews worked for Priority as a field employee.

38.     Priority paid Matthews a salary and job bonus when he worked in the field.

39.     Matthews regularly worked more than 40 hours a week.

40.     Priority typically scheduled Matthews for 12 hours of work a day.

41.     While working in the oilfield, Matthews typically worked at least 12 hours a day.

42.     Matthews regularly worked 7 days in a single week.

43.     As a result, Matthews regularly worked 84 (or more) hours a week.

44.     Priority knew Matthews was working overtime since it scheduled him for as many as 84 hours a week.

45.     When Matthews worked more than 40 hours in a week, Priority failed to pay him overtime.

46.     Under the FLSA, employees who perform largely technical and manual labor like Matthews are non-exempt and should be paid overtime when required to work over 40 hours in a single workweek.

47.     Priority did not provide Matthews with overtime pay.

48.     As a result, Matthews is entitled to time and a half for all hours worked in excess of 40 in single week under the FLSA.

49.     Priority's failure to pay Matthews overtime pay was no accident.

50.     Matthews worked with other Priority employees working schedules similar to his own.

51.     Priority regularly schedules the workers in the FLSA Class for 12 hours of work per day.

52.     Like Matthews, these workers regularly work 7 days per week.

53.     Priority knew the members of the FLSA Class were working overtime since it scheduled them for as many as 84 hours a week.

54.     Priority's records establish the FLSA Class regularly worked more than 40 (in fact, often more than 80) hours in a week.

55.     Like Matthews, the workers in the FLSA Class receive were paid on a salary and received a bonus when working in the field.

56.     The FLSA Class performed the same technical and manual job duties as Matthews and was denied overtime pay for the same reasons.

57.     Priority knew, or showed regardless disregard for whether, its policy of denying overtime pay violated the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

58.     Matthews brings his claim under the FLSA as a collective action.

59.     The members of the FLSA Class are similarly situated to Matthews in all relevant respects.

60.     The same policy that caused Matthews to be denied overtime pay caused Priority's other salaried workers in the Flowback/Well Testing and Coiled Tubing Divisions to be denied overtime pay as well.

61.     While the precise job duties performed by the FLSA Class might vary somewhat, these differences don't matter for the purposes of determining their entitlement to overtime.

62.     Nor do any differences in job duties matter for determining whether Priority's policy of denying overtime pay to those who perform largely technical and manual labor is legal (it isn't).

63.     The members of the FLSA Class are all entitled to overtime after 40 hours in a week.

64.     Because Priority uniformly refused overtime to its salaried workers who received field bonuses, Matthews and the FLSA Class are similarly situated within the meaning of 29 U.S.C. § 216(b).

65.     Priority employed more than 40 hourly employees like Matthews in the United States during the past 3 years.

66.     These workers, who are members of the FLSA class, are geographically disbursed, residing and working in multiple states.

67.     Because these workers do not have fixed work locations, these individuals may work in different states in the course of a given year.

68.     Absent a collective action, many members of the FLSA Class likely will not obtain redress of their injuries and Priority will retain the proceeds of its violations of the FLSA.

69.     Furthermore, individual litigation would be unduly burdensome to the judicial system.

70.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

71.     Numerous FLSA Class Members have joined this lawsuit.

72.     The FLSA Class Members to join this lawsuit worked in either the Flowback/Well Testing or Coiled Tubing divisions.

73.     The FLSA Class Members performed similar work in the Flowback/Well Testing and Coiled Tubing divisions.

74.     The FLSA Class Members received similar pay in the Flowback/Well Testing and Coiled Tubing divisions.

**CAUSE OF ACTION**
**<u>Violation of the FLSA</u>**

75.     Matthews incorporates the preceding paragraphs by reference.

76.     At all relevant times, Priority has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

77.     Priority employed Matthews and each member of the FLSA Class.

78.     Priority's pay policy denied Matthews and the FLSA Class overtime compensation as required by the FLSA.

79.     Priority's failure to pay Matthews and the FLSA Class overtime for primarily technical and manual labor work violates the FLSA.

80.     Priority's conduct, as described herein, was in willful violation of the FLSA.

Case 4:17-cv-01336 Document 107-1 Filed on 03/24/20 in TXSD Page 9 of 29

81.     Due to Priority's FLSA violations, Matthews and the FLSA Class are entitled to recover from Priority their unpaid overtime compensation, liquidated damages, reasonable attorney fees, costs, and expenses of this action.

## JURY DEMAND

82.     Matthews demands a trial by jury.

## PRAYER

WHEREFORE, Matthews prays for:

a.   An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the FLSA Class to permit them to join this action by filing a written notice of consent;

b.   A judgment against Priority awarding Matthews and the FLSA Class all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c.   An order awarding attorney fees, costs, and expenses;

d.   Pre- and post-judgment interest at the highest applicable rates; and

e.   Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Andrew W. Dunlap_
Michael A. Josesphson
State Bar No. 24014780
Andrew Dunlap
State Bar No. 24078444
Lindsay R. Itkin
State Bar No. 24068647
Jessica M. Bresler
State Bar No. 24090008
**Fibich, Leebron, Copeland,**
**Briggs & Josephson**
1150 Bissonnet
Houston, Texas 77005
Telephone:      (713) 751-0025
Telecopier:     (713) 751-0030
mjosephson@fibichlaw.com
adunlap@fibichlaw.com
litkin@fibichlaw.com
jbresler@fibichlaw.com

AND

Richard J. (Rex) Burch
Texas Bar No. 24001807
Matthew S. Parmet
Texas Bar No. 24069719
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:      (713) 877-8788
Telecopier:     (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com

AND

Andy Tindel
Texas Bar No. 24054500
**MT2 Law Group**
**Mann | Tindell | Thompson**
112 E. Line St., Ste. 304
Tyler, Texas 75702
Telephone:      (903) 596-0900
Telecopier:     (903) 596-0909
atindel@andytindel.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This First Amended Collective Action Complaint was served on all present Parties via the Court's ECF System.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**

Case 4:17-cv-01306-Document 107-1 Filed on 03/24/20 in TXSD Page 12 of 29

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| STEVEN MATTHEWS, individually and on behalf of all others similarly situated, | § | Docket No. 6:15-cv-00448 |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| PRIORITY ENERGY SERVICES, LLC., et al. | § | FLSA COLLECTIVE ACTION |
| | § | |
| Defendants. | § | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release of Claims ("Settlement Agreement") is made and entered into by Plaintiff Steven Matthews, individually and on behalf of all opt-in Plaintiffs and Arbitration Claimants (together referred to as "Plaintiffs"), and Defendants Priority Energy Services, LLC., Priority Well Testing, LLC, and Priority Coiled Tubing, LLC ("Defendants"). Plaintiffs and Defendants shall be referred to as the "Parties."

**1.      Procedural History.**

On April 24, 2015, Plaintiffs filed this lawsuit against Defendants, alleging violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (the "Lawsuit"). Specifically, Plaintiffs alleged Defendants failed to pay certain workers overtime for hours worked in excess of forty during workweeks. Claimants pursued the same claims through arbitration.

To avoid protracted litigation and expense, the Parties engaged in informal and/or formal discovery to identify the potential class members, documents, and records necessary for the Parties to

calculate as accurately as possible the number of hours worked by, and the wages paid to, the potential class members.

The Parties agreed to dismiss the claims discussed herein, whether alleged in federal court or arbitration, and seek approval and final dismissal of all claims through the Court presiding over *Steven Matthews, individually and on behalf of all others similarly situated v. Priority Energy Services, LLC, et al.*, C.A. No. 6:15-cv-00448.

After substantial, arms' length negotiations, the Parties reached an agreement to settle the Lawsuit on a class-wide basis. The Parties identified a total of eighty-two (82) opt-in Plaintiffs and arbitration Claimants who worked overtime hours during the relevant period (hereinafter referred to as the "Settlement Class").

The members of the Settlement Class, and their respective shares, are set forth in **Exhibit A**.

2.      **Benefits under Settlement Agreement.**

(a)      **Total Settlement Amount.** The amount available under the Settlement Agreement is ($700,000.00) ("Total Settlement Amount"). As set forth in Sections 2(b) and 2(c) below, the Total Settlement Amount consists of: (1) the negotiated settlement payments for distribution to the Settlement Class; (2) a negotiated award of attorneys' fees and costs; and (3) a service award for named Plaintiff in the amount of $2,500.00.

(b)      **Payments to Members of the Settlement Class.** Members of the Settlement Class will receive their share of the settlement as follows:

(1)      One half as back wages, from which taxes will be withheld and for which a W-2 will be issued; and

(2)     One half as liquidated damages, for which a Form 1099 will be issued with the amount reported in Box 3.

**Plaintiffs shall protect and indemnify Defendants** against any and all legally enforceable liens, subrogation claims and other rights that are lawfully asserted by any person or entity against the amount paid in settlement to Plaintiffs, including those for unpaid income taxes.  Plaintiffs agree that they shall be exclusively liable for all federal income taxes owed on the settlement proceeds, and that Defendants shall withhold from the wage portions of the settlement proceeds the required deduction for federal income taxes, social security and Medicare. However, Defendants shall remain liable for the employer portion of all payroll taxes (i.e., the employer portions of social security taxes, Medicare taxes, and state and federal unemployment taxes) which may be due as the result of the Settlement Payments paid pursuant to this Agreement. Further, Plaintiffs understand that Defendant makes no representations regarding tax liability.

(c)     **Attorneys' Fees and Costs:** Subject to the Court's approval, Counsel for Plaintiffs and Claimants shall receive the Fee Award of $280,000.00 and the Cost Allowance of $33,479.03. Payment shall be made to Bruckner Burch PLLC IOLTA Trust Account via wire transfer. Bruckner Burch PLLC shall receive a Form 1099 reflecting the payments for attorneys' fees and costs, and will provide Defendants with a properly executed IRS Form W-9.

**3.     Release.**

In exchange for the payments set forth in Section 2(b) of this Settlement Agreement, the members of the Settlement Class must waive, release, and discharge Defendants from any and all wage and hour claims, demands, rights, liabilities, suits, and causes of action of every nature, kind, and

description, and whether based on federal, state or local law, arising under or relating to wages or overtime during their employment with Defendants, including the claims asserted or that could have been asserted in the Lawsuit or in Arbitration. To that end, Plaintiffs shall evidence their agreement with the terms set forth herein by executing and/or depositing the settlement award check. Printed on the back of the settlement award check shall be the following language:

> By executing this check, I hereby agreed to forever release Defendants from any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Defendants for alleged unpaid overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or any other compensation and relief arising under the FLSA or any other state or local wage-related law applicable to the work performed for Defendants during the relevant time period.

4.    **Approval of the Settlement and Notification to the Settlement Class:**

   (a)    Within ten (10) calendar days from the execution of this Settlement Agreement, Plaintiffs shall provide Defendants' Counsel with an excel spreadsheet containing the name, last known physical address and email, and estimated amount of settlement for each of the Settlement Class Members.

   (b)    Within fifteen (15) calendar days after the execution of this Settlement Agreement, Plaintiffs' Counsel shall file a motion with the Court seeking approval of the settlement. The motion shall request that the Court enter a conditional order of dismissal of the lawsuit, pending implementation of the settlement program described herein.

   (c)    Within ten (10) business days after the Court approves this Settlement Agreement, Defendants will issue settlement checks to be distributed by Plaintiffs' Counsel or a Third-Party Administrator. Additionally, Defendants will issue an additional check of $2,500.00 to Steven Matthews reflecting any service awards.

5.    **Distribution of Attorneys' Fees and Cost Payments.**

On the same day Defendants issue the settlement checks for distribution to the Settlement Class Members, Defendants shall wire the agreed attorneys' fees and costs to Bruckner Burch PLLC in the sum of TWO HUNDRED AND EIGHTY THOUSAND ($280,000.00). Bruckner Burch PLLC will provide all necessary wire information and tax forms for such payment.

6.    **Dismissal Order.**

Thirty days (30) days after Defendants issue the settlement checks for distribution to the Settlement Class Members, the parties will jointly move for entry of an Order dismissing the Lawsuit with prejudice.

7.    **Non-Admission.**

Nothing in this Settlement Agreement should be construed as an admission of any wrongdoing by Defendants or any other person or entity.

8.    **This Settlement Is Fair, Adequate, and Reasonable.**

The Parties believe this Settlement Agreement is a fair, adequate, and reasonable settlement of the Lawsuit and have arrived at this Settlement Agreement in arms-length negotiations, taking into account all relevant factors, present and potential. This Settlement Agreement was reached after extensive negotiations and exchange of information.

9.    **Amendment or Modification.**

This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

**10.    Entire Agreement.**

This Settlement Agreement, including Exhibits, constitutes the entire agreement regarding the subject matter hereof, and no oral or written representations, warranties or inducements have been made to any Settlement Class Member concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in this Settlement Agreement.

**11.    Settlement Agreement Subject To Certain Conditions.**

This Settlement Agreement is contingent on Court approval of the Settlement Agreement as written. The Settlement Agreement shall be null and void, and any order entered by the Court in furtherance of the Settlement Agreement shall be treated as void *ab initio*, in the event the Court does not grant approval of this Settlement Agreement or the Court conditions approval on terms different than those set forth in the Settlement Agreement.

**12.    Authorization to Enter Into the Settlement Agreement.**

Counsel for all Parties warrant and represent they are expressly authorized by their clients to negotiate this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Settlement Agreement. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement Agreement and Court Approval. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement Agreement, the Parties may seek the assistance of the Court to resolve such disagreement.

13. **Binding on Successors and Assigns.**

This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto.

14. **Applicable Law.**

This Settlement Agreement shall be governed by and interpreted according to the laws of the State of Texas.

15. **Counterparts.**

This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts. Signatures transmitted by fax or PDF shall have the same effect as an original ink signature.

16. **Jurisdiction of the Court.**

The Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Settlement Agreement and all orders and judgments entered in connection therewith.

**THE UNDERSIGNED HAVE CAREFULLY READ THIS "SETTLEMENT AGREEMENT AND RELEASE"; THEY KNOW AND UNDERSTAND ITS CONTENTS; THEY FREELY AND VOLUNTARILY AGREE TO ABIDE BY ITS TERMS; AND THEY HAVE NOT BEEN COERCED INTO SIGNING THIS AGREEMENT.**

**AGREED TO BY DEFENDANTS**

Dated: ___2/20/17___          _____
                              Representative of Priority Energy Services, LLC,
                              Priority Well Testing, LLC, and Priority Coiled
                              Tubing, LLC representative

**AGREED TO BY CLASS REPRESENTATIVE**

Dated: ___Feb 19, 2018___     _____
                              Steve Mathews (Feb 19, 2018)
                              Steven Matthews, Individually and as Class
                              Representative

# EXHIBIT A

Case 6:15-cv-00448-RWS-KNM Document 107-1 Filed 03/04/00 in TXSD Page 22 of 29
Case 4:17-cv-01326 Document 147-1 Filed 04/06/18 Page 10 of 13 PageID #:
2274

| | Name | Settlement Amount |
|---|---|---|
| Arbitration | Almanza, Issac | $9,920.66 |
| Arbitration | Arrambide, Jordan | $4,526.30 |
| Arbitration | Arrambide, Nathan | $12,647.43 |
| Arbitration | Arrambide, Sedric | $5,761.03 |
| Opt-In | Badeaux, Beau | $750.00 |
| Opt-In | Barlow, Michael J | $750.00 |
| Opt-In | Bazan, Adrian | $7,818.93 |
| Opt-In | Bazan, Eduardo | $750.00 |
| Opt-In | Bonin, Braidon | $850.10 |
| Opt-In | Bottos, John | $5,084.69 |
| Arbitration | Brouilette, Brent | $3,814.08 |
| Arbitration | Buford, James | $5,948.49 |
| Arbitration | Calato, Brian | $5,599.27 |
| Opt-In | Campos, Adrian | $750.00 |
| Arbitration | Carter, Anthony | $6,918.53 |
| Opt-In | Casares, Felix | $1,627.82 |
| Arbitration | Conn, Dennis | $8,716.63 |
| Arbitration | Cook, Devin | $1,533.01 |
| Arbitration | Cota, Ryan | $12,195.13 |
| Arbitration | Counts, Myrle | $750.00 |
| Arbitration | Davis, Adara | $5,699.69 |
| Opt-In | Davis, William Jr | $4,898.67 |
| Arbitration | Dryer, Justin | $8,322.48 |
| Arbitration | Dugas, Jayce | $2,008.81 |
| Opt-In | Duhon, Justin | $1,192.56 |
| Opt-In | Duhon, Lynn | $750.00 |
| Opt-In | Easley, Justin | $3,454.22 |
| Opt-In | Estraca Jr, Juan | $1,260.61 |
| Opt-In | Facchine, Patrick | $1,889.09 |
| Arbitration | Gay, Cameron | $2,300.09 |
| Opt-In | Harris, Bryant | $750.00 |
| Arbitration | Hawthorne, Jon | $9,646.57 |

| | | |
|---|---|---|
| Arbitration | Hebert, Grayson | $2,459.60 |
| Opt-In | Henderson, Kaitlin | $8,435.39 |
| Arbitration | Hyman, Omar | $13,545.78 |
| Opt-In | Inzerella, Jason | $2,038.63 |
| Opt-In | Jewell, Jason | $7,660.32 |
| | | |
| Opt-In | Joseph, Juan A | $1,578.66 |
| Opt-In | Keeling, Brandon | $25,195.68 |
| Arbitration | Kennedy, Gregory | $10,466.79 |
| Arbitration | Kozma, Eric | $1,891.22 |
| Opt-In | Kulikowski, Gerald | $6,515.33 |
| Arbitration | Lacoste, Cory | $3,358.89 |
| Arbitration | Lander, Christopher | $750.00 |
| Arbitration | Locke, James | $1,086.95 |
| | | |
| Opt-In | Lopez, Francisco | $750.00 |
| Arbitration | Marchese, Nico | $3,544.72 |
| Arbitration | Massett, Jeremy | $10,007.20 |
| Plaintiff | Matthews, Steven | $6,527.91 |
| Arbitration | McAdams, Jeremy | $16,477.60 |
| Arbitration | McCord, Stephen | $13,449.15 |
| Opt-In | Meaman, Mike | $750.00 |
| Opt-In | Moreno, James M | $1,724.03 |
| Opt-In | Murphy, Shannon | $750.00 |
| Opt-In | Newsome, John | $750.00 |
| Opt-In | Norris, Cody | $4,710.13 |
| | | |
| Opt-In | Ovalle, Juan | $1,986.46 |
| Opt-In | Palmour, Cody | $4,575.71 |
| Arbitration | Phillips, David | $7,849.13 |
| Arbitration | Plaisance Jr, Junius | $12,203.27 |
| Arbitration | Plaisance Sr, Junius | $750.00 |
| Arbitration | Plaisance, Troy | $750.00 |
| Opt-In | Ray, Robert | $1,636.28 |

| | | |
|---|---|---|
| Opt-In | Reeves, David W | $2,220.89 |
| Arbitration | Rhodes, Marion | $5,534.75 |
| Arbitration | Rogers, Chet | $1,131.82 |
| Arbitration | Santoya, Arturo | $9,330.94 |
| Opt-In | Shaffer, Jimmy | $2,270.95 |
| Arbitration | Soto, Daniel | $15,167.59 |
| Arbitration | Terranova, Victor | $750.00 |
| Opt-In | Trahan, David | $750.00 |
| Opt-In | Umphries, Joseph | $750.00 |
| Opt-In | Vela, Jose | $750.00 |
| Opt-In | Vinson, Robert | $3,103.85 |
| Opt-In | Wallace, Mark | $750.00 |
| Opt-In | West Jr, Willaim | $4,450.83 |
| Opt-In | White, Joe | $4,965.32 |
| Opt-In | White, Travis D | $750.00 |
| Opt-In | Wooley, Zachary L | $2,538.86 |
| Arbitration | Wright, Nicholas | $5,694.58 |
| Arbitration | Young, Michael | $10,050.78 |
| | | $384,020.97 |

| | |
|---|---|
| Settlement | $700,000.00 |
| Fee | $280,000.00 |
| Cost | $33,479.03 |
| Award | $2,500.00 |
| Net | $384,020.97 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **STEVEN MATTHEWS** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 6:15cv448** |
| | § | |
| **PRIORITY ENERGY SERVICES, LLC,** | § | |
| ***et. al.*** | § | |
| | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is the Joint Motion to Approve Settlement (ECF 145), seeking approval of the parties' Settlement Agreement and Release. For the reasons below, it is recommended that the motion be **GRANTED**.

The Court must approve any settlement resolving a FLSA claim for overtime compensation unless settlement is reached "due to a bona fide FLSA dispute over hours worked or compensation owed." *Bodle v. TXL Mortgage Corp.*, 788 F.3d 159, 165 (5th Cir. 2015). The parties submitted a sealed copy of the Settlement Agreement and Release together with the motion for approval of the settlement. The Court identified three issues that required additional briefing and ordered the parties to submit additional briefing in support of the motion for approval. Namely, the Settlement Agreement references an exhibit detailing the settlement class and their respective shares that was not attached to the agreement, the signature for Defendant on the settlement agreement is dated one year earlier than Plaintiff's signature and the motion did not include any discussion applying the *Johnson* factors to this case to support the requested attorney's fees using a percentage method.

1

In response to the Order, Plaintiff filed a Brief in Support of Joint Motion to Approve Settlement Agreement (ECF 147) on April 6, 2018.

Having reviewed the pleadings and the agreement between the parties, the agreement constitutes a fair and reasonable resolution of a bona fide dispute. Plaintiff's additional briefing provided the exhibit to the agreement with the distribution of funds to the class and explained that there is a scrivener's error on the date for Defendant's signature.

The Settlement Agreement and Release submitted by the parties provides for an attorney's fee that amounts to 40% of the gross total award. On November 7, 2016, the Court granted Plaintiff's Motion to Certify Class and conditionally certified this case as a collective action. The analysis for considering a FLSA collective action settlement is similar to the approval process for a Rule 23 class action. *See, e.g., Rodriguez v. Stage 3 Separation, LLC, et al.*, 2015 WL 12866212 (W.D.Tex. Dec. 23, 2015). In cases involving a common fund, the Fifth Circuit has expressly approved of the use of the percentage method to calculate attorney's fees, so long as it is cross-checked with the *Johnson* factors. *See Union Asset Mgmt Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012). The so-called *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939 (1989).

2

Plaintiff's supplemental briefing and attached declaration adequately address the *Johnson* factors to support the requested fee. The experienced counsel for the collective class has worked on this matter for nearly three years of litigation and attorney time invested in the case has reached approximately 600 hours. The litigation has included contested motion practice and hearings concerning, among other things, conditional certification of the class and arbitration issues. Matters were complicated by a portion of the class members going to arbitration and a portion proceeding with this lawsuit. As is the nature of a contingency fee arrangement, counsel for the class bore the risk of receiving no recovery for its efforts either due to the ultimate result of the case or the volatility of the oil and gas industry. Counsel successfully negotiated a settlement for the class that is fair and reasonable in light of the facts of this case. Accordingly, the Joint Motion to Approve Settlement (ECF 144) should be granted.

## RECOMMENDATION

It is accordingly recommended that the Joint Motion to Approve Settlement (ECF 144) be **GRANTED**.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415,

Case 4:17-cv-02626-DNJ Document 107-1 Filed on 03/24/20 in TXSD Page 28 of 29

1430 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1)

(extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 20th day of April, 2018.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **STEVEN MATTHEWS** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 6:15cv448** |
| | § | |
| **PRIORITY ENERGY SERVICES, LLC,** | § | |
| *et al.* | § | |
| | § | |

**ORDER ADOPTING REPORT AND
RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

      The Report and Recommendation of the Magistrate Judge, which contains her findings, conclusions, and recommendation for the disposition of the Joint Motion to Approve Settlement (Docket No. 144) has been presented for consideration. The Report and Recommendation (Docket No. 148), filed on April 20, 2018, recommends that the motion be granted. No objections have been filed. The Court agrees with the Magistrate Judge that the settlement should be approved. The Court therefore **ADOPTS** the findings and conclusions of the Magistrate Judge as those of the Court.

      In light of the foregoing, it is

**ORDERED** that the Joint Motion to Approve Settlement (Docket No. 144) is **GRANTED**. The parties shall file closing documents within **thirty (30) days**.

      **SIGNED this 11th day of May, 2018.**

*Robert W Schroeder III*

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE